UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CARLOS BERMUDEZ,

Plaintiff,

v.

ROOSEVELT UNION FREE SCHOOL DISTRICT and THE BOARD OF EDUCATION FOR THE ROOSEVELT UNION FREE SCHOOL DISTRICT,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No.: 26-cv-6651

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff, Carlos Bermudez, (hereinafter "Plaintiff") through his counsel, Book Law LLP hereby submits this Complaint and complains of the Defendants, upon information and belief, as follows:

## NATURE OF ACTION

1. Plaintiff commences this action for the purpose of seeking appropriate remedies and redress for violations of rights secured to him by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12201 et seq., and for violation of the New York State Human Rights Law, Executive Law § 296, et seq. ("NYSHRL"). Plaintiff alleges Defendants discriminated against him due to his disability by failing to provide a reasonable accommodation and retaliated against him, by terminating his employment based on his disability.

2. Plaintiff seeks equitable and monetary relief under the ADA and the NYSHRL, including reinstatement to the position from which he was discharged, backpay, front pay, compensatory damages for pain and suffering and emotional distress, attorneys' fees and such other and further relief to which he is entitled under law.

**JURISDICTION AND VENUE**

3. This action is brought pursuant to the ADA. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3), (4).

4. This court has supplemental jurisdiction over Plaintiff's state law claims under the NYSHRL, pursuant to 28 U.S.C. § 1367(a).

5. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the Roosevelt Union Free School District and the Board of Education of the Roosevelt Union Free School District ("Defendants") is located at 240 Denton Avenue, Roosevelt, N.Y. 11575, in Nassau County.

6. Plaintiff filed a Notice of Claim on or about June 30, 2026, an Amended Notice of Claim on or about July 10, 2026, and a Second Amended Notice of Claim on or about October 13, 2026 against Roosevelt Union Free School District and the Board of Education of the Roosevelt Union Free School District. A 50-h examination was conducted on October 2, 2026.

7. On or around July 14, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Roosevelt Union Free School District and the Board of Education of the Roosevelt Union Free School District.

8. On or around July 24, 2026, Plaintiff received a Right to Sue Letter from the EEOC.

9. Plaintiff exhausted his administrative duties and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

**PARTIES**

10. At all times relevant herein, Plaintiff was employed as a full-time Assistant Principal at Roosevelt High School by the Roosevelt Union Free School District and Defendant Board of Education for the Roosevelt Union Free School District (collectively, "Defendants").

11. At all times relevant, Carlos Bermudez ("Plaintiff") resides in Suffolk County, New York and is an individual male.

12. Defendant Roosevelt Union Free School District ("District"), is a school district existing under the laws of the State of New York, having its office at 240 Denton Place, Roosevelt, New York 11575; and at all times relevant herein was Plaintiff's employer as defined under the applicable laws.

13. Defendant Board of Education of the Roosevelt Union Free School District ("Board") is the governing board of the district, having its office at 240 Denton Place, Roosevelt, New York 11575; and at all times relevant herein was a policy maker, employee, agent, and/or assignee of the district.

**STATEMENT OF FACTS**

14. Plaintiff began his employment with Defendants at the start of the 2022–2023 school year in a probationary appointment as an Assistant Principal at Roosevelt High School. His probationary term ends July 31, 2026. This probationary term was unilaterally extended by Defendants due to Plaintiff's extended leave of absence. However, Plaintiff was never notified as to the new end date.

15. During his employment, Plaintiff notified Defendants' Human Resources Department ("Human Resources") and relevant administrators of preexisting chronic medical conditions requiring ongoing treatment and medication management. Plaintiff provided Defendants with medical documentation and requested schedule flexibility in the workplace. Although Plaintiff was granted periodic leave on an informal basis, Defendants failed to engage in an individualized assessment to evaluate Plaintiff's limitations, essential job functions, or identify potential reasonable accommodations and issue a written accommodation determination.

16. In or around April 2025, Plaintiff made a formal accommodation request to

Defendants for remote work and/or workplace schedule flexibility based on the previously communicated medical condition and medication-related adjustments. The request was communicated to Human Resources and supported by medical documentation and/or medication-management documentation. Rather than initiate a formal ADA interactive process, Assistant Superintendent for Human Resources & Professional Development Dr. Eric Nezowitz contacted Plaintiff regarding the request and pressured Plaintiff to withdraw or rescind it.

17. On or about April 4, 2025, Plaintiff rescinded his request to Superintendent Wightman.

18. On May 29, 2025, Plaintiff experienced a medical emergency while at work and was taken by ambulance to the hospital. At least two Assistant Superintendents witnessed the incident. Plaintiff also informed Defendants' administrators via text that he was hospitalized and that doctors suspected a stroke.

19. Following the May 29, 2025, medical emergency, Plaintiff's ability to return to work was unknown. Defendants had immediate and extensive notice of the event, the resulting hospitalization and work restrictions, the possibility of serious neurological disability, and Plaintiff's leave status. However, despite this knowledge, Defendants failed to reach out to Plaintiff regarding FMLA leave.

20. As a result, Plaintiff took sick time and vacation accruals for the period of May 30 through June 23, 2025. He then took leave without pay, with Board of Education approval, from June 24 through June 30, 2025.

21. On June 24, 2025, Defendants designated FMLA leave for the period of May 30, 2025, through July 31, 2025 (9 weeks of leave).

22. Upon information and belief, the Plaintiff was eligible for the remaining 3 weeks of the 12 weeks of FMLA leave entitlement. However, Plaintiff did not receive a further designation

explaining the treatment of the August 1 through August 21, 2025, leave.

23. Upon information and belief, the Plaintiff asserts the Defendants converted the remaining FMLA entitlement leave to "unpaid personal leave," thereby depriving the Plaintiff of his job protected status under FMLA from August 1, 2025, through August 21, 2025.

24. Plaintiff, on or about August 14, 2025, having received no notification from Defendants regarding the designation of his remaining FMLA entitlement leave, formally requested an unpaid leave of absence from August 1, 2025, through October 31, 2025. The request was made due to his current medical condition and inability to physically return to work without an accommodation.

25. With this request, Plaintiff provided Defendants with medical documentation supporting that he had a disability within the meaning of the ADA and formally invoking his rights under the ADA by requesting Defendants engage in the interactive process to determine what, if any, accommodation would be necessary to enable him to return to work and perform the essential duties of his job. Although Plaintiff sought additional unpaid leave at this stage, Plaintiff expressly stated that he was open to discussing other reasonable accommodations, supported by medical documentation, that would permit a safe return.

26. On August 19, 2025, the Defendants acknowledged the Plaintiff's request for disability leave and receipt of medical documentation. Defendants scheduled a meeting with Plaintiff for August 21, 2025, to engage in an interactive process to determine what reasonable accommodations, such as remote work and/or modified work schedule, could be provided by Defendants. However, no meeting occurred. Instead, Defendants granted Plaintiff's leave and at the August 26, 2025, Board of Education action meeting Plaintiff's leave was approved by the Board of Education as "unpaid personal leave."

27. On or about October 6, 2025, Plaintiff requested to extend his leave. By letter dated

October 15, 2025, Defendants acknowledged Plaintiff's request and stated that a meeting would be held on or about October 24, 2025, to discuss his request and to determine if any reasonable accommodation could be provided. Dr. Nezowitz also indicated that the Defendants needed additional medical documentation and provided the Plaintiff with the Defendant's ADA Form-Physician's Questionnaire for Plaintiff's treating physician to complete and a list of Plaintiff's job functions. The Defendants further clarified that it is the Defendants who determine the essential functions of his position.

28. On or about October 23, 2025, Dr. Kelly Polito submitted the completed physician questionnaire, indicating the Plaintiff could perform the following listed job functions: attendance, virtual teacher observations, professional development. However, Plaintiff needed additional cognitive testing and evaluation to further define his limitations and/or restrictions, and to determine what additional job functions he could perform. Finally, a return date of on or before January 23, 2026, was recommended.

29. Although a meeting was scheduled for October 24, 2025, on October 23, 2025, Defendants cancelled the meeting on the stated grounds that leave had been approved, and Defendants perceived no other accommodation request. However, the Defendants never assessed (1) whether any other viable reasonable accommodation was available based on the medical documentation and physician questionnaire provided, (2) clarified what job functions were essential vs marginal to determine an appropriate reasonable accommodation, and (3) treated leave as the default reasonable accommodation.

30. At the November 18, 2025, Board meeting, the Board approved the requested leave as "unpaid personal".

31. On January 29, 2026, Plaintiff again requested an interactive-process meeting to evaluate whether any accommodation beyond leave, or any pre-return-to-work planning, would

enable Plaintiff to perform the essential functions of his job, even though Defendants had yet to identify what were the essential functions of his job, as his condition evolved. However, no meeting was scheduled, and no reasonable accommodations were considered, which would enable Plaintiff to return to work. Instead, Defendants simply granted Plaintiff's request for continuation of disability-related accommodation leave.

32. By letter dated February 2, 2026, Defendants unilaterally determined that leave would continue through June 30, 2026 instead of the requested April 30, 2026 date. By unilaterally designating June 30, 2026, the Defendants forced leave as the accommodation for a longer period of time than requested, rather than evaluate alternative accommodations, which the Plaintiff was clearly seeking and were recommended by his physicians, and supported by his medical documentation.

33. In response, Plaintiff immediately objected to Defendants' unilateral designation of the June 30, 2026 return to work date and communicated that he was not requesting a fixed June 30, 2026, leave period in advance. Plaintiff further communicated that his condition remained evolving, that he would be reevaluated on or before April 30, 2026, at which time his providers would have more information regarding his ongoing condition in order to recommend all return to work options, and this would be discussed with the Defendants at a future scheduled meeting.

34. Since Plaintiff's medical event on May 29, 2025, Plaintiff provided the Defendants with consistent updates regarding his ongoing neurological condition, medical evaluation and treatment. His physicians did not indicate that a physical return to work is infeasible or indefinite. The Plaintiff's physicians never declared he was unable to work or perform the essential duties of his job. However, his condition was complex, evolving, and affected by changing symptoms, medications, treatment, and reevaluation and as a result a definite return-to-work date has not been prescribed by his treating physicians. Instead, his physicians recommended reevaluation to determine his limitations and/or restrictions. The lack of a definitive return date, did not preclude

the Defendants from engaging with the Plaintiff to explore reasonable accommodations, which would enable him to perform the essential duties of his job. The Defendants simply ignored Plaintiff's requests, failed to engage Plaintiff to explore other available reasonable accommodations and treated leave as the default accommodation.

35. At all relevant times while on leave, the Plaintiff was ready, willing and able to work, however, an in-person presence was not feasible. Although Plaintiff was restricted from returning to work in person, during his leave, Plaintiff continued to work by assisting administrators, at their request, with operational items, such as duty schedules and assignments, health and safety protocols, and meeting the new high school principal. Plaintiff's inability to return to work in person, was supported by medical documentation, which was provided to the Defendants so that a reasonable accommodation could be identified that would allow him to perform the essential duties of his job and plan for an in person return to work. He further communicated to Defendants that his capacity and restrictions to return to work physically were not static and would need to be assessed and reassessed over increments of time as testing and treatment progressed.

36. On April 30, 2026, Plaintiff submitted updated medical documentation and again expressly requested a good-faith ADA interactive process to evaluate potential accommodations, as his condition evolved. Plaintiff stated that he was not demanding a single specific accommodation but expressly referenced potential remote or modified work schedule and explained that his request was current and prospective.

37. Plaintiff's inability to independently design a complete accommodation package was a consequence of the complexity and changing nature of his neurological condition. It was not a declaration of an inability to perform the essential functions of his job, which again had not been clearly designated.

38. Again, by letter dated May 8, 2026, Defendants treated Plaintiff's request as solely a

request for an extension of unpaid leave. Defendants also demanded extensive additional medical information before a meeting would be scheduled. Defendants enclosed the ADA Form- Physician Questionnaire and stated that upon receipt and review of the completed questionnaire a meeting would be scheduled. Defendants made receipt and review of their questionnaire and supporting documentation a condition precedent to the dialogue Plaintiff had repeatedly requested.

39. Before Plaintiff could submit the completed questionnaire and supporting documentation, Defendants issued a letter dated June 18, 2026, received by Plaintiff via email on June 22, 2026, formally denying further unpaid leave and directing Plaintiff to report physically to work on July 1, 2026.

40. The June 18, 2026, letter inaccurately stated that Plaintiff was requesting no accommodation other than leave, even though his April 30, 2026 correspondence expressly requested an interactive process and referenced potential remote and modified work schedule. The letter also stated that Defendants lacked sufficient information to evaluate other reasonable accommodations, while simultaneously denying additional leave and directing Plaintiff to report to work. The letter further acknowledged that Plaintiff's existing medical documentation indicated that he remained unable to work, which was not accurate. This decision was made prior to the Defendants receiving the requested medical documentation and the physician questionnaire submitted by Dr. Weiss.

41. On June 22, 2026, Plaintiff's physician, Dr. Weiss, submitted the completed questionnaire to Dr. Nezowitz. The completed questionnaire documented significant neurological impairments, cognitive and functional limitations, unpredictable symptoms, active treatment and medication changes. Dr. Weiss indicated that an extension of leave up to approximately six months was medically necessary to complete diagnostic work and allow for Plaintiff to acclimate to treatment, identifying evaluation by approximately December 30, 2026, but did not rule out the

possibility of an earlier return. Dr. Weiss not only identified the job functions Plaintiff could perform but also identified potential reasonable accommodations, including temperature control, symptom and medication breaks, hydration access, restroom proximity, exit proximity, and an appropriately located office. This demonstrates that Plaintiff did not seek leave as the only possible accommodation for all time and that he was able to perform functions of his job.

42. Although, by letter dated June 29, 2026, Defendants acknowledged receipt and review of Plaintiff's updated medical documentation, Defendants failed to explore other viable reasonable accommodations recommended by his physician, that would enable Plaintiff to perform the essential duties of his position. Instead, Defendants directed an unconditional physical return, without meaningfully exploring with Plaintiff the essential and marginal functions of his position, which duties required physical presence, whether a phased, reduced, remote, hybrid, or modified return was medically and operationally feasible, whether temporary reassignment of marginal functions was possible, whether a finite leave period would permit treatment and reevaluation, or whether reassignment to a suitable vacant position should be considered.

43. Defendants treated leave as the only accommodation and then denied such accommodation based on generalized assertions concerning administrative continuity, temporary coverage, and disruption and the Plaintiff's inability to perform the essential functions of his job.

44. Furthermore, despite having the updated medial documentation the Defendants specifically requested, the Defendants did not schedule a meeting as promised and the return-to-work directive remained in effect. As a result, this directive placed Plaintiff in the untenable position of being denied an extension of his leave and requiring Plaintiff to return to work physically without a reasonable accommodation. The Defendants' directive further denied Plaintiff's right to the interactive process that Defendants said would occur after receipt of the medical documentation.

45. Prior to the return of work directive, Plaintiff had consistently requested that

Defendants engage in an interactive process to establish a safe interim arrangement for his return and assess a reasonable accommodations he may need to perform the essential duties of his job. Defendants failed and/or refused to conduct a meaningful, individualized interactive process and instead directed Plaintiff to report physically to work.

46. By letter dated July 6, 2026, and received by Plaintiff via certified mail on July 8, 2026, Defendants informed Plaintiff that the Superintendent of Schools, Dr. Shawn K. Wightman would recommend to the Board of Education that Plaintiff's probationary appointment of Assistant Principal would be terminated effective September 25, 2026. The Board would vote on this recommendation at its meeting on August 25, 2026.

47. The Plaintiff was appointed to his probationary position as assistant principal on August 1, 2022, and eligible for tenure as of July 31, 2026. Contrary to Defendants' assertion in their July 6, 2026 letter, Plaintiff never received notice that due to being out on unpaid leave his probationary period had been extended from the original date of July 31, 2026.

48. On July 30, 2026, Plaintiff received notice from Defendants that the Board of Education was set to vote on the recommendation for termination at its next board meeting scheduled for August 18, 2026. (the original date of the board meeting was August 25, 2026). This correspondence set forth the reasons for the recommendation for termination, and stated in part, as follows: "Plaintiff's unpaid leave ended on June 30, 2026, and he failed to return to work on July 1, 2026, and did not have an approved leave or absence"; "after more than a year absence he remained unable to perform duties of his position due to a physical or mental disability."

49. At no time during the Plaintiff's approved leave, was he unable to perform the duties of his position. Plaintiff provided the district with sufficient medical documentation supporting his limitations and indicated that although a physical return to work may not be feasible due to Plaintiff's evolving medical condition, other reasonable accommodations, such as remote work and/

or a modified/flexible work schedule, would have enabled him to perform the essential functions of his job and should have been considered as a viable reasonable accommodation. The Defendants never evaluated the Plaintiff for any reasonable accommodations and instead treated leave as the default accommodation available to the Plaintiff.

50. At the Board of Education's August 18, 2026, action meeting, the Board terminated Plaintiff's employment effective September 25, 2026.

51. Plaintiff suffered disparate treatment. Upon information and belief, Defendants permitted Dr. Dionne Wynn, a similarly situated administrative employee, to perform duties remotely or with modified arrangements during medical recovery, while refusing to meaningfully explore comparable options for Plaintiff. Plaintiff also previously requested remote-work consideration and was pressured to withdraw or rescind that request absent a formal interactive process or individualized accommodation assessment.

52. Defendants have also engaged in a retaliatory and discriminatory adverse employment action, when Defendants terminated Plaintiff's employment, claiming as a basis for his termination, Plaintiff's inability to perform the essential duties of his job. Yet there was no discussion regarding what listed job functions were essential vs marginal, to determine if he could perform the essential duties of his job with a reasonable accommodation, in light of his medical condition. Defendants failed to consider or assess alternative reasonable accommodations identified by Plaintiff's physicians and instead treated leave as the only accommodation and subsequently terminated Plaintiff because he failed to return to work as directed and had been on a leave of absence for one year.

53. Defendants knew of Plaintiff's limitations, received numerous requests and medical information identifying potentially workable adjustments, and refused accommodations that would have permitted performance.

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, and other non-pecuniary losses.

55. The above are just examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

56. As detailed herein, Defendants exhibited a pattern and practice of not only discrimination but also retaliation, in that Plaintiff's disability leave was approved and extended based on the same medical documentation on multiple occasions. However, as the Plaintiffs tenure date of July 31, 2026, approached, he was subsequently denied any further leave, directed to return to work without consideration of a reasonable accommodation, and ultimately terminated.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**

57. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 57 as if fully set forth herein.

58. Plaintiff suffers from a disability within the meaning of the ADA, 42 U.S.C. § 12102.

59. Plaintiff's disability substantially limits Plaintiff's major life activities.

60. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

61. The Defendant is an employer within the meaning of the ADA.

62. The ADA requires an employer to provide a reasonable accommodation for a qualified individual with a disability.

63. Although Defendants initially granted Plaintiff leave as a reasonable accommodation, Defendants violated Plaintiff's rights under the ADA by treating leave as the only available reasonable accommodation, failing to identify the essential v marginal functions of his

job, and refusing to engage in an interactive process to properly assess other reasonable accommodations to enable Plaintiff to perform the essential functions of his job. If Defendants had explored and provided Plaintiff with a reasonable accommodation, Plaintiff would have been able to perform the essential functions of his job. Defendants then terminated Plaintiff, due to his disability, when he failed to return to work as directed.

64. Due to Defendants actions, Plaintiff suffered an adverse employment action. He was denied consideration for tenure and subsequently terminated.

65. Defendants acted knowingly, intentionally, and maliciously in causing the termination of Plaintiff's employment.

66. As a result of the Defendant's acts, Plaintiff suffered the loss of employment, wages, health benefits, retirement and pension benefits.

67. Plaintiff is entitled to damages sustained to date and continuing in excess of the jurisdictional limits of this Court to be determined at the trial herein, together with interest, compensatory damages, attorneys' fees and costs of this action.

**AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. 42 U.S.C. § 12203 states, "(a) Retaliation. – No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

70. Plaintiff consistently engaged in protective activity, in that he sought a reasonable accommodation in connection with his established serious medical condition and disability. He cooperated with the Defendants, provided appropriate medical documentation to support his

disability, and requested interactive meetings to explore a reasonable accommodation beyond leave. Defendants continually interfered with the Plaintiff's exercise of his ADA rights, in that they refused to engage in any interactive process, instead continually extended leave, treated leave as the only available accommodation, denied further leave, issued a return-to-work directive without consideration of any alternative reasonable accommodation, and recommended Plaintiff's termination, which the Board ultimately approved.

71. Defendants acted knowingly, intentionally, and maliciously in causing the termination of Plaintiff's employment.

72. As a result of the Defendant's acts, Plaintiff suffered the loss of employment, wages, health benefits, retirement and pension benefits.

73. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. Executive Law §296 provides that "1. It shall be unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristic, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges or employment."

76. Plaintiff suffers from a disability within the meaning of the NYSHRL.

77. At all times relevant herein, Plaintiff was employed by the Defendants within the meaning of NYSHRL.

78. The Defendant is an employer within the meaning of the NYSHRL.

79. Defendant violated Plaintiff's rights under the NYSHRL by failing to engage in the interactive process to assess a reasonable accommodation that would enable the Plaintiff to perform the essential functions of his job. Instead, Defendants treated leave as the only viable accommodation and terminated Plaintiff when he failed to return to work physically, without a reasonable accommodation.

80. Plaintiff suffered an adverse employment action when Defendants directed Plaintiff to return to work without any consideration of any reasonable accommodations that would enable the Plaintiff to perform the essential duties of his job and by terminating Plaintiff based on his disability in violation of New York Executive Law § 296(1)(a), when he failed to return to work as directed.

81. Defendants acted knowingly, intentionally, and maliciously in causing the termination of Plaintiff's employment.

82. As a result of the Defendant's acts, Plaintiff suffered the loss of employment, wages, health benefits, retirement and pension benefits.

83. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

**AS A FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER STATE LAW**

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. New York State Executive Law §296 (7) provides that "it shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he (iii) requested a reasonable accommodation.

86. Defendants engaged in such unlawful discriminatory and retaliatory practice when

they continuously treated leave as the default accommodation, refused to engage in interactive process to assess the essential v marginal functions of his job in order to identify a reasonable accommodation, supported by medical documentation, which would enable the Plaintiff to perform the essential duties of job and then terminated Plaintiff based on his disability and terminated Plaintiff based on his disability.

87. Defendants acted knowingly, intentionally, and maliciously in causing the termination of Plaintiff's employment.

88. As a result of the Defendant's acts, Plaintiff suffered the loss of employment, wages, health benefits, retirement and pension benefits.

89. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296 (7).

**JURY DEMAND**

Plaintiff demands that the foregoing causes of action be tried before a jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff demands judgment against Defendants in an amount to be determined at trial plus interest, including, but not limited to, reinstatement of Plaintiff to his prior position of employment without any loss of benefit or seniority, all compensatory and emotional distress, back pay and front pay, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: October 16, 2026
New York, New York

BOOK LAW LLP

______________________

Nicole A. Murphy
7 Times Square, 19th floor
New York, NY 11042
T. (212) 244-0344
*Attorneys for Plaintiff*

DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.